IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOUGLAS FROSCH** ) | |
| ) | **CIVIL ACTION** |
| ) | **No. 2:25-cv-1708** |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | |
| ) | |
| **HOLLYWOOD CASINO at THE MEADOWS,** ) | |
| **PENNSYLVANIA HARNESS RACING** ) | |
| **COMMISION, SCOTT LISHIA** ) | |
| **and SCOTT EGGER** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **Defendant.** ) | |

## COMPLAINT

**AND NOW**, comes the Plaintiff, Douglas Frosch., by and through his attorneys, Alexander H. Lindsay, Jr., Esquire, Max B. Roesch, Esquire, and THE LINDSAY LAW FIRM, P.C., and file the within Complaint in Civil Action, and in support thereof, aver the following:

### I. JURISDICTION AND VENUE

1.  This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and the First Amendment to the United States Constitution.

2.  Venue is present in the Western District of Pennsylvania as this is the district where the causes of action arose, the district where the transactions and occurrences took place out of which the causes of action arose, and is a district in which Defendants regularly conduct activity.

1

## II. PARTIES

3. Douglas Frosch is an adult individual who resides in Butler County Pennsylvania and is a citizen of the United States and the Commonwealth of Pennsylvania.

4. The Pennsylvania Harness Racing Commission is a government agency operating under the aegis of the Department of Agriculture of the Commonwealth of Pennsylvania.

5. Defendant Hollywood Casino at the Meadows is a business operating in the Commonwealth of Pennsylvania operating a horseracing track and casino. The horseracing portion of Defendant's business is subject to and operated in concert with the Pennsylvania Harness Racing Commission and its regulations.

6. Defendant Scott Lishia is an adult individual who, at all times material to this complaint was the Director of Racing at the Meadows Racetrack. He is sued in his individual capacity.

7. Defendant Presiding Judge Scott Egger is an adult individual who is, and was at all times material to this complaint, the Presiding Judge at the Meadows Racetrack and an agent and employee of the Pennsylvania Harness Racing Commission, acting under the authority of the Pennsylvania Harness Racing Commission. He is sued in his individual capacity.

## III. FACTUAL ALLEGATIONS

8. Plaintiff Douglas Frosch, along with several partners, purchased Creatin' Havoc, a harness racehorse, in 2021 at the Lexington Sale for $100,000.00.

9. In 2023, Plaintiff Frosch became the sole owner of Creatin' Havoc.

10. Plaintiff Frosch hired trainer Richard Perfido to train Creatin' Havoc in August of 2023.

11.     In March of 2024, following an incident in which Perfido referred Creatin' Havoc's care to Performance Equine LLC, an ambulatory veterinary care clinic, the relationship between Perfido and Plaintiff Frosch deteriorated.

12.     Following the deterioration of the relationship, Perfido and Plaintiff Frosch parted ways in March of 2024.

13.     Frosch moved Creatin' Havoc from the Meadows Racetrack to Harvey's Lake Training Center in eastern Pennsylvania.

14.     Soon thereafter, Perfido, Performance Equine, and Frosch entered litigation over fees and unapproved veterinary care, with Perfido and Performance Equine initiating suits in Magisterial District Court, and Frosch filing counter-claims.

15.     Plaintiff Frosch also initiated complaints against the Perfido and Performance Equine requesting that the Harness Racing Commission investigate their malfeasance.

16.     When Perfido and Performance Equine were initially successful in Magisterial District Court, the Defendant Egger threatened Frosch "If you don't get this taken care of, I'll pull your [State Racing Commission] License", despite knowing that Frosch could appeal the judgment of the District Magistrate.

17.     In the course preparing for litigation, Frosch found information indicating that Perfido may have engaged in misconduct at the Meadows in 2012, with accusations of fraudulent ownership, theft and associated litigation,

18.     At various intervals, Frosch inquired with the Defendant Egger and investigators employed by the Pennsylvania Harness Racing Commission regarding the 2012 allegations against Perfido and Frosch's own complaints.

3

19. Defendant Egger refused to provide any information, claiming to be ignorant of the allegations, and further refused to provide information regarding the investigation of Frosch's complaints against Perfido and Performance Equine.

20. Frosch continued to inquire to Defendants Egger, and Racing Director of Racing Scott Lishia, as well as investigators Dave Talpas and Paul Abel about the investigation into his complaints and the prior complaints and was rebuffed each time that he inquired.

21. On July 16, 2025, Frosch encountered Defendants Egger and Director Lishia on the stairway of the parking garage attached to the Meadows Casino and again inquired about the outstanding information and was again rebuffed.

22. On July 18, 2025 The Meadows issued a trespass notice to Frosch, permanently banning him from the Meadows Racetrack and Casino, allegedly for "3-4" incidents of "undesirable conduct".

23. The trespass notice did not elucidate what "undesireable conduct" Plaintiff Frosch is supposed to have engaged in.

24. The only plausible explanation for the trespass notice is that it was issued in retaliation for Plaintiff Frosch's repeated inquiries regarding investigation of Perfido's malfeasance and Defendants' failure to follow the codified procedures of the Pennsylvania Harness Racing Commission.

25. Defendants Egger and Meadows Racetrack and Casino published the trespass notice to Hollywood Gaming at Mahoning Valley Race Course.

26. On September 3, 2025, security personnel at Hollywood Gaming at Mahoning Valley Race Course confronted Plaintiff Frosch regarding the trespass notice, which caused

4

Plaintiff Frosch embarrassment and inconvenience when he was confronted with the notice while at the Mahoning Valley casino.

27.  The issuance of a permanent ban for unspecified "undesirable conduct" is grossly disproportionate, especially in light of Defendants only issuing a temporary ban to individuals who committed serious crimes on the floor of the Casino, including terroristic threats.

28.  Plaintiff has been unable to return Creatin' Havoc to train and race at the Meadows Racetrack and Casino,

29.  The trespass notice has caused economic harm to Plaintiff Frosch, as he is no longer able to return his horse, Creatin' Havoc, to train or race at the Meadows Racetrack. Specifically, Plaintiff Frosch is:

   a. Unable to house Creatin' Havoc at the Meadows;

   b. Unable to enter into contracts for training or providing care to Creatin' Havoc with contractors based out of the Meadows;

   c. Subject to additional costs associated with having to house, train, compete, and care for Creatin' Havoc on the opposite end of the Commonwealth;

   d. Subject to additional costs associated with being unable to compete at the Meadows.

## Count I

### First Amendment Retaliation

30.  Paragraphs 1 through 25 are incorporated herein by reference as if fully set forth.

31.  For a First Amendment retaliation claim, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the

5

constitutionally protected conduct and the retaliatory action. *Thomas v. Indep. Twp*., 463 F.3d 285, 296 (3d Cir. 2006) citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003).

32. Plaintiff Frosch engaged in conduct protected by the First Amendment, specifically in communicating complaints and inquiries directed to Defendants Egger and Lishia regarding Perfido and Performance Equine.

33. The Meadows and Egger retaliated against Frosch for his exercise of his First Amendment rights by permanently banning him from the Meadows Racetrack and Casino.

34. "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.' " *Thomas*, 463 F. 3d at 296, *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir.2006) (quoting *Suppan v. Dadonna,* 203 F.3d 228, 235 (3d Cir.2000)).

35. A person of ordinary firmness would be deterred from exercising her First Amendment Rights if he knew he would be facing a permanent ban.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount in excess of the arbitration limits, plus costs, equitable relief in the form of an injunction lifting the ban and rescinding the trespass notice, and such relief as the Court may deem proper.   A JURY TRIAL IS DEMANDED.

## COUNT II
### Depravation of a Protected Liberty Interest in Violation of the 14th Amendment

36. All prior paragraphs are incorporated by reference.

37. Defendants banned Plaintiff Frosch for "undesirable conduct" that was in fact an exercise of his First Amendment Rights

38. Defendants published false and defamatory statements stigmatizing Plaintiff as having engaged in "undesirable conduct.

39. Defendants' statements implied that Plaintiff was guilty of wrongdoing and had been banned as a result

37. Defendants' stigmatized Plaintiff and interfered with his pursuit of life liberty and happiness by preventing him from engaging in any business associated with the Meadows Racetrack and Casino.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount in excess of the arbitration limits, plus costs, equitable relief in the form of an injunction lifting the ban and rescinding the trespass notice, and such relief as the Court may deem proper.   A JURY TRIAL IS DEMANDED.

## **PENDANT STATE CLAIMS**

### **Intentional Interference with Prospective Contractual Relations.**

38. Defendants were aware of Plaintiff's prospective contractual relations with trainers and other contractors based out of the Meadows Casino and Racetrack.

39. By issuing a trespass notice permanently banning Plaintiff from the Meadows, Defendants intentionally interfered with those prospective contractual relations

40. Plaintiff was damaged by Defendants' interference because he is:

a. Unable to house Creatin' Havoc at the Meadows;

b. Unable to enter into contracts for training or providing care to Creatin' Havoc with contractors based out of the Meadows;

c. Subject to additional costs associated with having to house, train, compete, and care for Creatin' Havoc on the opposite end of the Commonwealth;

      d.      Subject to additional costs associated with being unable to compete at the Meadows.

      40.      Defendants' actions were not privileged or justified.

Respectfully submitted:

THE LINDSAY LAW FIRM, P.C.,

*s/Alexander H. Lindsay, Jr.*
Alexander H. Lindsay, Jr., Esquire
Pa. Supreme Court Id. No. 15088

110 East Diamond Street, Suite 301
Butler, Pennsylvania 16001
Phone: (724) 282-6600
Fax: (724) 282-2672